## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JOHN W. HOUEDENOU,

    Plaintiff,

    v.

CAMRIS INTERNATIONAL, LLC,

    Defendant.

Civil Action No. 25-3488-TDC

## MEMORANDUM OPINION

Self-represented Plaintiff John W. Houedenou has filed a civil action against his former employer, CAMRIS International, LLC ("CAMRIS"), in which he asserts wrongful termination in violation of public policy; race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12117, denial of medical leave and retaliation for taking medical leave in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, 2611–2620; and common law state tort claims.

CAMRIS has filed a Partial Motion to Dismiss the Amended Complaint in which it seeks dismissal of the wrongful termination in violation of public policy, national origin discrimination, disability discrimination, and state tort claims. The Motion is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The operative Amended Complaint alleges the following relevant facts, which the Court accepts as true for purposes of resolving the Motion.

Plaintiff John W. Houedenou, a Black man of Beninese origin, was a full-time employee at CAMRIS who received positive recognition for his job performance, including a pay raise and a written commendation for his work. In late 2022, Houedenou developed a medical condition that caused debilitating lower back pain. Houedenou's treating physician provided a medical note and FMLA certification form stating that Houedenou required one month of medical leave, with an anticipated return date of January 8, 2023. CAMRIS rejected the FMLA certification form and supporting documentation as deficient and, as required under 29 C.F.R. § 825.305(c), granted Houedenou seven days to cure the deficiencies. Houedenou and his physician resubmitted relevant documentation, but CAMRIS again rejected it and denied Houedenou's request for FMLA leave.

Houedenou returned to his native country of Benin to receive medical treatment from a physician, physical therapy, and traditional healing treatment. When Houedenou's medical needs required leave beyond January 8, 2023, he notified CAMRIS by email that he would instead return to work on January 25, 2023. However, before January 25, 2023, CAMRIS terminated Houedenou's employment on the basis of job abandonment.

Houedenou then pursued administrative remedies through the United States Equal Employment Opportunity Commission ("EEOC"). During the EEOC process, CAMRIS accused Houedenou of timesheet fraud. Houedenou asserts that this accusation is false because he was a salaried employee whose pay was not based on hours worked, and that he corrected entries for paid time off only with managerial approval. Houedenou further contends that this accusation was a pretext for discriminatory denial of medical leave and discriminatory termination based on race

and national origin. According to Houedenou, CAMRIS similarly terminated another African employee named Hatem as soon as he developed a medical condition. In contrast, CAMRIS granted over three months of medical leave and all necessary accommodations to "Miss Carla who works with the VIDAD department (onsite lab position)" and to "Mathews Susie," a Project Support Manager, neither of whom is Black or African. Am. Compl. ¶ 12, ECF No. 12.

Houedenou asserts that the termination of his employment caused him to suffer 14 months of lost wages and benefits, car repossession notices, utility shutoffs, eviction, homelessness, and emotional distress. Houedenou further alleges that the termination led to an inability to afford daycare that caused speech and language delays in his young son, as well as stress for his wife that led to preeclampsia, subsequent emergency medical treatment, and chronic illness.

On May 21, 2025, the EEOC issued a Notice of Right to Sue. Houedenou then filed the original Complaint in this case on August 20, 2025 in the Circuit Court for Prince George's County, Maryland. After CAMRIS removed the case to this Court, Houedenou filed the presently operative Amended Complaint in which he alleges, in the following numbered counts: (1) wrongful termination in violation of public policy; (2) race and national origin discrimination in violation of Title VII; (3) disability discrimination in violation of the ADA; (4) FMLA interference and retaliation; (5) defamation; and (6) intentional infliction of emotional distress.

## DISCUSSION

In the Motion, CAMRIS seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) of Houedenou's claims of wrongful termination in violation of public policy, national origin discrimination under Title VII, disability discrimination under the ADA, defamation, and intentional infliction of emotional distress.

## I.   Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II.   Wrongful Termination in Violation of Public Policy

In Count 1, Houedenou asserts that CAMRIS is liable for wrongful termination in violation of public policy because he was terminated for exercising his federally protected rights under the FMLA, Title VII, and the ADA. Maryland law recognizes wrongful termination claims for at-will employees whose termination "contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). To establish wrongful termination, "the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002). In considering whether a clear mandate of Maryland public policy prohibits an employee's discharge, courts are limited by two factors. First, the tort of wrongful discharge is inapplicable where the

4

public policy sought to be vindicated already has a statutory remedy. *Id.* at 490. Second, the public policy mandate must be "reasonably discernible from prescribed constitutional or statutory mandates." *Id.* at 490–91.

Here, Houedenou has alleged that he was wrongfully terminated in retaliation for seeking FMLA leave and because of discrimination based on race, national origin, and disability. The FMLA, Title VII, and the ADA provide statutory remedies for such claims, and Houedenou, in fact, has asserted claims under these provisions. Where such statutory remedies are available, no wrongful discharge tort claim is available. *See Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 190 (Md. 1989) (holding that where Title VII and the Maryland Fair Employment Practices Act already set forth remedies for the unlawful sex discrimination at issue, the tort of wrongful discharge was not available). Accordingly, the Motion will be granted as to Count 1.

### III.   National Origin Discrimination

In Count 2, Houedenou alleges that CAMRIS violated Title VII by engaging in race and national origin discrimination against him, specifically, by subjecting him to disparate treatment as compared to similarly situated non-Black and non-African employees with medical issues. CAMRIS does not seek dismissal of the race discrimination claim but contends that Houedenou has not alleged sufficient facts to support a plausible claim of national origin discrimination.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To state a Title VII discrimination claim, a plaintiff may demonstrate through direct or circumstantial evidence that race or national origin "motivated the employer's adverse employment decision." *See Hill v. Lockheed Martin Logistics*

*Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Alternatively, a plaintiff may proceed through the approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. On a motion to dismiss, a plaintiff need not necessarily establish a *prima facie* case of discrimination, but "the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable'" for discrimination. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). To state a *prima facie* claim of discrimination based on disparate treatment, a plaintiff must present facts demonstrating: (1) membership in a protected class; (2) satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment under similar circumstances. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

CAMRIS does not contest that Houedenou, who is originally from Benin, has adequately alleged membership in a protected class, satisfactory job performance, and an adverse employment action, specifically, termination. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (stating that termination "indisputably constitute[s] adverse employment action"). CAMRIS argues only that Houedenou has not alleged sufficient facts to show that his termination was the result of national origin discrimination, in part because he has not identified others of a different national origin who were treated better than him. Houedenou, however, specifically alleges that CAMRIS has a pattern of discharging those who "have a health issue as an African American," that "another African employee named Hatem" was similarly terminated after facing a medical condition, and

6

that "[n]ot a single person is an African American among those employees" to whom CAMRIS has granted extended medical leave. Am. Compl. ¶¶ 8, 12.

The United States Court of Appeals for the Fourth Circuit has found that race discrimination can encompass discrimination based on "ancestry or ethnic characteristics" and has stated that because "'the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of . . . origin is not a bright one' . . . [t]rying to draw clear distinctions between someone's ethnicity and national origin can often amount to impossible hairsplitting." *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 157 (4th Cir. 2018) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring)) (addressing a race discrimination claim under 42 U.S.C. § 1981). The *Nnadozie* court thus found that evidence showing that a plaintiff was discriminated against for being "African" could fairly support Title VII claims based on both national origin discrimination and race discrimination. *Id.* at 162–63. Where Houedenou has specifically alleged that CAMRIS terminated his employment because he is of Beninese origin, he actually returned to Benin for medical treatment during the time period that he was unable to work, he has specifically identified another African employee who was similarly terminated after sustaining medical issues, and he has identified two similarly situated, non-African American comparators who were not terminated and received all necessary accommodations when they encountered medical issues, the Court finds that at this early stage, Houedenou has adequately alleged national origin discrimination. Accordingly, the Motion will be denied as to the national origin discrimination claim in Count 2.

## IV.    Disability Discrimination

In Count 3, Houedenou alleges a violation of the ADA because his severe back condition constituted a disability under the ADA, and he "was qualified to perform his job with [a]

7

reasonable accommodation, yet Defendant failed to engage in the interactive process and terminated him instead." Am. Compl. ¶ 15. The ADA provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). As relevant here, the ADA defines "disability" as including "a physical or mental impairment that substantially limits one or more major life activities of such individual." Id. § 12102(1)(A). The term "discriminate against a qualified individual on the basis of disability" includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

Id. § 12112(b)(5)(A). Under ADA regulations, "to determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (2025). Such a process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id.

In the Motion, CAMRIS argues that the ADA claim should be dismissed because a failure to engage in the interactive process is not an independent cause of action. Because "the interactive process is not an end in itself" and is instead only "a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position," an employer who fails to engage in the interactive process will not be held liable under the ADA "if the employee cannot identify a reasonable accommodation that would have been possible," or that "would enable the disabled person to perform the job's essential functions."

8

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013).  In his brief, Houedenou does not dispute that a failure to engage in the interactive process is not a freestanding claim and instead requests that the Court construe Count 3 as an ADA claim for a failure to provide a reasonable accommodation.  Where a self-represented complaint must be construed liberally, the Court will do so.  *See Erickson*, 551 U.S. at 94.

To establish a *prima facie* case of a failure to provide a reasonable accommodation under the ADA, a plaintiff must show that (1) the plaintiff "had a disability within the meaning of the statute"; (2) the employer had notice of the disability; (3) with reasonable accommodations the plaintiff "could perform the essential functions of the position"; and (4) the employer "refused to make such accommodations."  *Wilson*, 717 F.3d at 345.  Here, CAMRIS does not dispute that Houedenou had a disability, that it had notice of the disability, or that it refused to make any accommodations.  The question is whether Houedenou sought a reasonable accommodation and whether with that accommodation, he "could perform the essential functions of the position."  *Id.*

The ADA provides that a "'reasonable accommodation' may include . . . part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), and interpretive guidance on the ADA further specifies that "other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment."  29 C.F.R. pt. 1630, app. § 1630.2(o).  The Fourth Circuit has stated that an accommodation consisting of the grant of additional leave "will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question."  *Wilson*, 717 F.3d at 345 n.7; *see Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 637 (4th Cir. 2023) (stating that unpaid leave may be a reasonable accommodation "where the disability that

9

interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work"); *see also Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017) (stating that "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA").

Here, Houedenou initially requested leave for a limited, finite time period of one month, until January 8, 2023, but that request was denied. He then requested an additional 17 days of leave after that date, until January 25, 2023. Although these requests could be construed as requests for a reasonable accommodation, and based on the reference to the FMLA they can be inferred to relate to unpaid leave, Houedenou has not alleged specific facts showing that the accommodation of his leave request would have allowed him to perform the essential functions of his job by January 25, 2023. *See Wilson*, 717 F.3d at 340–41, 346 (upholding a grant of summary judgment where the plaintiff initially took eight weeks of medical leave with his employer's permission, sought another two days of leave, and then was terminated, because there was "no evidence to conclude that had [the plaintiff] been accommodated with his two-day leave request, he would have been able to perform the essential functions of his job at the conclusion of the leave period"). The Motion will therefore be granted as to Count 3.

## V.      Defamation

In Count 5, Houedenou alleges a claim for defamation based on his assertion that CAMRIS accused him of timesheet fraud during the EEOC process. CAMRIS seeks dismissal of this count on the grounds that such statements are subject to an absolute privilege protecting statements made during quasi-judicial proceedings.

Under Maryland law, to establish a claim of defamation, a plaintiff must demonstrate that (1) "the defendant made a defamatory statement to a third person"; (2) "the statement was false"; (3) "the defendant was legally at fault in making the statement"; and (4) "the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009)). Witnesses, parties, and judges have absolute immunity from civil liability for statements made in judicial proceedings and certain quasi-judicial proceedings. *See Norman v. Borison*, 17 A.3d 697, 708–09 (Md. 2011). To determine whether an administrative proceeding qualifies as the type of proceeding to which the absolute privilege applies, courts consider "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements." *Id.* at 710 (quoting *Gersh v. Ambrose*, 434 A.2d 547, 552 (Md. 1981)). Adequate procedural safeguards can include proceedings that are "adversar[ial] in nature" in which the parties are represented by counsel, the right for each party to "present his case by oral or documentary evidence," and an "exclusive record for decision" comprised of the parties' testimony, exhibits, and pleadings. *Gersh v. Ambrose*, 434 A.2d 547, 549 (Md. 1981) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)).

Generally, the "EEOC constitutes a quasi-judicial agency with the authority to administer federal employment discrimination laws, investigate claims by aggrieved parties, and bring actions itself." *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 458 (D. Md. 2014). Given that in EEOC proceedings, subpoenas may be issued for documents, information, and witnesses, the EEOC may file suit at the conclusion of its investigation, and a complainant must file a charge of discrimination with the EEOC as a prerequisite to a private civil action, this Court concurs with the many other district courts that have found that the proceedings before the EEOC are quasi-

11

judicial for purposes of a privilege against a defamation claim. *See id.*; *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797, 804 (E.D. Va. 2003) (collecting cases); *see also Booth v. Total Health Care, Inc.*, 880 F. Supp. 414, 415–16 (D. Md. 1994) (finding that statements made to the Maryland Human Relations Commission in response to the plaintiff's sex discrimination complaint were absolutely privileged), *aff'd* 48 F.3d 1215 (4th Cir. 1995).

In opposing the Motion, Houedenou does not contest that an absolute privilege applies to communications made during the EEOC process or to certain EEOC-related communications. Houedenou argues only that his defamation claim cannot be dismissed at this stage because a privilege is an affirmative defense. "[W]here facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6) . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). In the Amended Complaint, Houedenou specifically asserts that the allegedly defamatory statement is that CAMRIS "falsely accused Houedenou of timesheet fraud during the EEOC process." Am. Compl. ¶ 8. Although Houedenou now argues that dismissal is not warranted because the accusation of timesheet fraud may have been repeated outside of the EEOC process, there are no allegations in the Amended Complaint that either directly or indirectly make that claim. Notably, Houedenou filed the Amended Complaint after he received notice of CAMRIS's intent to seek dismissal of the defamation claim on this basis, yet he did not or could not include any facts in support of his present position. Accordingly, where the Amended Complaint explicitly acknowledges that the allegedly defamatory statement was made during the EEOC process, the Court finds that the

defamation claim should be dismissed because the statement at issue was subject to the absolute privilege. The Motion will be granted as to Count 5.

## VI.    Intentional Infliction of Emotional Distress

In Count 6, Houedenou alleges a claim of intentional infliction of emotional distress ("IIED") against CAMRIS. Under Maryland law, the tort of IIED has four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress"; and "(4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977); *see McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 286 (D. Md. 2020). As to the second prong, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614.

Houedenou alleges that CAMRIS engaged in extreme and outrageous misconduct by denying his medical leave, terminating his employment while he was undergoing medical treatment, fabricating misconduct allegations, and discriminating against him on the basis of race and disability. The fact that Houedenou has alleged that he was subjected to a discriminatory personnel action, and was accused of misconduct, is not enough to demonstrate extreme and outrageous misconduct. *See Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 9–10, 16 (Md. 1992) (finding no extreme and outrageous misconduct where an employer required an employee to submit to a polygraph test, accused her of theft, and demoted her, even though the employee was hospitalized for psychiatric treatment); *Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 352 (D. Md. 2012) (finding no extreme and outrageous misconduct where an employee alleged discriminatory denial of a promotion, differential policy enforcement, unfavorable

transfers, harsher evaluation standards, and false accusations); *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) ("As inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness . . . applicable to a claim of intentional infliction of emotional distress under Maryland law."). Courts applying Maryland law have dismissed IIED claims where the misconduct was more severe than that alleged by Houedenou. *See Beye v. Bureau of Nat'l Affs.*, 477 A.2d 1197, 1204–05 (Md. 1984) (holding that an IIED claim was inadequate as pleaded where the plaintiff alleged that his supervisors gave him poor performance ratings, threatened to fire him, harassed him, physically assaulted him, passed him over for promotion, and deceived him into resigning); *Arbabi*, 205 F. Supp. 2d at 465–66 (holding that an IIED claim was inadequate as pleaded where the plaintiff alleged that her supervisor consistently made derogatory remarks based on her gender, religion, and national origin in front of customers, which caused her to lose customers, resign, and require medical treatment for stress). The Motion will be granted as to Count 6.

## VII.   Leave to Amend

As to the counts which the Court will dismiss pursuant to the Motion, Houedenou seeks leave to amend the complaint to attempt to reinstitute those claims. Leave to amend a pleading "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); Fed. R. Civ. P. 15(a) (stating that leave to amend "shall be freely given when justice so requires."). A self-represented complaint should not be dismissed summarily unless it appears that the plaintiff can prove no set of facts that would entitle him to relief. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978); *Sweeting v. McCabe*, 141 F. App'x 177,

178 (4th Cir. 2005) (unpublished). Notably, the Court provided Houedenou with the opportunity to amend the original Complaint after he had received a written notice of the specific arguments that CAMRIS would assert on the Motion to Dismiss, and he filed the presently operative Amended Complaint in part to address those arguments.

As to Count 1, wrongful termination based on public policy, the Court will not grant leave to amend because the fact that Houedenou's claims relate to conduct addressed by the identified federal statutes precludes any wrongful termination tort claim, even if Houedenou ultimately cannot prevail on any or all of his statutory claims. *See Makovi*, 561 A.2d at 190.

As for Count 3, where the Motion focused on the interactive process and not the issue of whether the additional leave could constitute a reasonable accommodation, and this issue is highly fact-based, the Court will grant leave to amend to provide Houedenou with the opportunity to plead additional facts relating to his disability status, essential job functions, whether he could perform those functions with his requested leave, and the reasonableness of his request.

On Count 4, Houedenou, even with advanced notice of CAMRIS's argument for dismissal, has provided no basis to conclude that the alleged defamatory statements about timesheet fraud were made outside of the EEOC process. Nevertheless, because he provided only limited facts on this issue, and the context of the alleged defamatory statements remains unclear, the Court will permit Houedenou to amend to add more specific facts relating to the alleged defamation.

Finally, as to Count 5, although Houedenou seeks to amend to add more facts on the severity of the emotional distress, the Court has found that the IIED claim fails not because of insufficient facts on emotional distress, but because the alleged misconduct at issue does not come close to the level of extreme and outrageous conduct necessary to support an IIED claim. Because amendment would be futile, the Court will not grant leave to amend on Count 5.

## CONCLUSION

For the foregoing reasons, CAMRIS's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that it will be granted as to Counts 1, 3, 5, and 6 and denied as to Count 2. Houedenou's request for leave to amend the operative complaint will be granted in part and denied in part in that it will be granted to allow him to plead additional facts in support of his ADA reasonable accommodation claim in Count 3 and his defamation claim in Count 4 but will be otherwise denied. A separate Order shall issue.

Date:   April 7, 2026

THEODORE D. CHUANG
United States District Judge